Marc D. Fink (MN Bar No. 343407)
Center for Biological Diversity
209 East 7th Street
Duluth, Minnesota 55805
Tel: 218-525-3884
Fax: 817-582-3884
mfink@biologicaldiversity.org
Applicant *Pro Hac Vice*

Matt Kenna (CO Bar No. 22159)
Public Interest Environmental Law
679 E. 2nd Ave., Suite 11B
Durango, Colorado 81301
Tel: 970-385-6941
matt@kenna.net
Applicant *Pro Hac Vice*

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

## TUCSON DIVISION

| | |
|---|---|
| Center for Biological Diversity, )<br>　　　　　　　)<br>　　　　Plaintiff, )<br>　　　　　　　)<br>　　vs. )<br>　　　　　　　)<br>United States Forest Service; and )<br>United States Fish and Wildlife Service, )<br>　　　　　　　)<br>　　　　Defendants. )<br>＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿ ) | Case No. 4:10-cv-431<br><br>COMPLAINT FOR<br>DELCARATORY AND<br>INJUNCTIVE RELIEF |

INTRODUCTION

1.     This case concerns the ongoing failure of Defendants United States Forest Service ("Forest Service") and United States Fish and Wildlife Service ("FWS") to meet mandatory obligations under the Endangered Species Act ("ESA") to insure adequate protection for numerous threatened and endangered species that reside within national forests in Arizona and New Mexico, and the Forest Service's continued approval of projects and activities that will result in the taking of these imperiled species.

2.     Plaintiff challenges (1) the Forest Service's ongoing failure to comply with the mandatory terms and conditions set forth in FWS' 2005 Biological Opinion concerning implementation of forest plans in the Southwest Region, including mandatory monitoring and reporting requirements; (2) the Forest Service's ongoing failure to insure that the implementation of forest plans in the Southwest Region is not likely to jeopardize the continued existence of threatened and endangered species; (3) the Forest Service and FWS decision to reinitiate consultation regarding the continued implementation of forest plans in the Southwest Region for the Mexican spotted owl, while refusing to reinitiate consultation for the southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, and spikedace; and (4) the Forest Service's continued approval of projects and activities in the Southwest Region that are likely to result in the take of threatened and endangered species species, including the Mexican spotted owl, southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, and spikedace, prior to the reinitiation and completion of consultation.

3.    Plaintiff seeks (1) to compel the Forest Service to immediately begin complying with the mandatory terms and conditions of the 2005 Biological Opinion; (2) to compel the Forest Service and FWS to immediately reinitiate and timely complete consultation regarding the impacts of the continued implementation of forest plans in the Southwest Region on the Mexican spotted owl, southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, and spikedace; and (3) injunctive relief concerning the site-specific projects that are identified and challenged in this complaint, which FWS anticipates will result in the additional take of threatened and endangered species.

JURISDICTION

4.    Jurisdiction is proper in this Court under 28 U.S.C. § 1331; 28 U.S.C. § 1346; 5 U.S.C. §§ 551 *et seq.*; and 16 U.S.C. § 1540(g)(1) because this action involves the United States as a defendant and arises under the laws of the United States, including the ESA, 16 U.S.C. §§ 1531 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*  Plaintiff provided Defendants with sixty days written notice prior to filing suit, as required by the ESA citizen suit provision.  *See* 16 U.S.C. § 1540(g)(2).  An actual justiciable controversy exists between Plaintiff and Defendants.  The requested relief is proper under 28 U.S.C. §§ 2201 & 2202; 5 U.S.C. §§ 705 & 706; and 16 U.S.C. § 1540(g).  The challenged agency actions are final and subject to this Court's review under 5 U.S.C. §§ 702, 704, and 706.

VENUE

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C.

§ 1540(g)(3)(A), because the projects, activities, and many of the national forests at issue

are located within Arizona.  Defendants U.S. Forest Service and U.S. Fish and Wildlife

Service also have offices in the district within which the challenged decisions and failures

to act have occurred.  Venue is proper in the Tucson Division because the Coronado

National Forest is located within Pima, Chochise, Santa Cruz, and Graham Counties, and

is headquartered in Tucson, Arizona.  *See* LRCiv 77.1(a).

PARTIES

6.     Plaintiff Center for Biological Diversity is a non-profit corporation with over

40,000 members.  The Center works through science, law, and creative media to secure a

future for all species, great or small, hovering on the brink of extinction.  The Center's

main office is located in Tucson, Arizona.

7.     Plaintiff's members use and enjoy the national forests in Arizona and New

Mexico for a variety of purposes including hiking, fishing, hunting, camping, water

supply, photographing scenery and wildlife, and engaging in other vocational, scientific,

and recreational activities.  Plaintiff's members use and enjoyment of these national

forests includes specific areas where the threatened and endangered species identified in

this Complaint may be found, as well as within or near the project areas of the site-

specific projects that are identified and challenged in this Complaint.  Plaintiff's members

derive health, recreational, inspirational, religious, scientific, educational, and aesthetic

benefits from their activities within these national forests.  Plaintiff's members intend to

continue to use and enjoy these national forests frequently and on an ongoing basis in the future, including this summer and fall.  Plaintiff's members planned and continued use and enjoyment of these national forests includes specific areas where the threatened and endangered species identified in this Complaint may be found, as well as within or near the project areas of the projects identified and challenged in this Complaint.

8.     The health, aesthetic, recreational, scientific, educational, religious, and procedural interests of Plaintiff and its members has been and will continue to be adversely affected and irreparably injured if Defendants' ongoing violations of the ESA continue.  These are actual, concrete injuries caused by the Defendants' violations of the ESA.  Plaintiff's and its members injuries will be redressed by the relief sought.

9.     Defendant U.S. Forest Service ("Forest Service") is an agency within the U.S. Department of Agriculture.  It and its officers are responsible for the lawful management of the national forests in Arizona and New Mexico.

10.    Defendant U.S. Fish and Wildlife Service ("FWS") is an agency within the U.S. Department of the Interior.  It and its officers are responsible for administering the ESA, particularly regarding potential impacts to freshwater fish and wildlife species that have been listed as threatened or endangered with extinction pursuant to the ESA.

ENDANGERED SPECIES ACT

11.    The ESA requires all federal agencies to utilize their authorities to carry out programs for the conservation of threatened and endangered species.  16 U.S.C. § 1536(a)(1).

12.   The ESA requires the Forest Service, in consultation with FWS, to insure that any action authorized, funded, or carried out by the agency is not likely to jeopardize the continued existence of any threatened or endangered species or result in the destruction or adverse modification of the critical habitat of such species.  16 U.S.C. § 1536(a)(2). "Critical habitat" is defined as geographic areas that are essential to the conservation of a species, and is to be designated by FWS at the time a species is listed as endangered or threatened.  16 U.S.C. § 1532(5)(A).

13.   "Action" is broadly defined under the ESA to include all activities or programs of any kind authorized, funded, or carried out by federal agencies, including actions directly or indirectly causing modifications to the land, water, or air, and actions intended to conserve listed species or their habitat.  50 C.F.R. § 402.02.

14.   For each federal action, the Forest Service must request from FWS whether any listed or proposed species may be present in the area of the proposed agency action. 16 U.S.C. § 1536(c)(1); 50 C.F.R. § 402.12.  If listed or proposed species may be present, the Forest Service must prepare a "biological assessment" to determine whether the listed species is likely to be adversely affected by the proposed action.  *Id*.  The biological assessment must generally be completed within 180 days.  *Id*.

15.   If the Forest Service determines that a proposed action may affect any listed species or critical habitat, the agency must engage in formal consultation with FWS, unless the biological assessment concludes that the proposed action is not likely to adversely affect any listed species or critical habitat, and FWS concurs with that finding in writing.  50 C.F.R. § 402.14.

16.   To complete formal consultation, FWS must provide the Forest Service with a "biological opinion" explaining how the proposed action will affect the listed species or habitat.  16 U.S.C. § 1536(b); 50 C.F.R. § 402.14.  Consultation must generally be completed within 90 days from the date on which consultation is initiated.  16 U.S.C. § 1536(b)(1)(A); 50 C.F.R. § 402.14(e).

17.   If FWS concludes that the proposed action "will jeopardize the continued existence" of a listed species, the biological opinion must outline "reasonable and prudent alternatives."  16 U.S.C. § 1536(b)(3)(A).

18.   If the biological opinion concludes that the action is not likely to jeopardize the continued existence of a listed species, and will not result in the destruction or adverse modification of critical habitat, FWS must provide an "incidental take statement," specifying the amount or extent of such incidental taking on the listed species, any "reasonable and prudent measures" that FWS considers necessary or appropriate to minimize such impact, and setting forth the "terms and conditions" that must be complied with by the Forest Service to implement those measures.  16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i).

19.   In order to monitor the impacts of incidental take, the Forest Service must monitor and report the impact of its action on the listed species to FWS as specified in the incidental take statement.  16 U.S.C. § 1536(b)(4); 50 C.F.R. §§ 402.14(i)(1)(iv), 402.14(i)(3).  If during the course of the action the amount or extent of incidental taking is exceeded, the Forest Service must reinitiate consultation with FWS immediately.  50 C.F.R. § 401.14(i)(4).

20.   The reinitiation of formal consultation is required and must be requested by the Forest Service or FWS if (1) the amount or extent of taking specified in the incidental take statement is exceeded; (2) new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered; (3) the action is modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion; or (4) a new species is listed or critical habitat designated that may be affected by the identified action. 50 C.F.R. § 402.16.

21.   After the initiation or reinitiation of consultation, the Forest Service is prohibited from making any irreversible or irretrievable commitment of resources with respect to the agency action which may foreclose the formulation or implementation of any reasonable and prudent alternative measures.  16 U.S.C. § 1536(d).

22.   Section 9 of the ESA and its implementing regulations prohibit the unauthorized "take" of threatened and endangered species.  16 U.S.C. § 1538(a)(1); 16 U.S.C. § 1533(d); 50 C.F.R. § 17.31.  "Take" is defined broadly to include harming, harassing, trapping, capturing, wounding or killing a protected species either directly or by degrading its habitat.  *See* 16 U.S.C. § 1532(19).  Taking that is in compliance with the terms and conditions specified in a biological opinion is not considered a prohibited taking of the species concerned.  16 U.S.C. § 1536(o)(2).

FACTUAL ALLEGATIONS

23.   The Southwest Region of the Forest Service includes 11 national forests in Arizona and New Mexico.

24.   The Southwest Region of the Forest Service includes some of the most diverse fauna and flora in the nation, including a high number of species that are designated as threatened or endangered with extinction pursuant to the ESA.

25.   Several of the national forests in the Southwest Region support local endemic species and often contain the entire range of a particular species on one national forest.

26.   From 1985 to 1988, each of the 11 national forests in the Southwest Region developed and approved forest plans pursuant to the National Forest Management Act.

27.   On April 15, 1993, the Mexican spotted owl was listed as threatened with extinction pursuant to the ESA.

28.   On May 14, 1996, FWS issued a biological opinion on the 11 forest plans for the Southwest Region, which concluded that implementation of the forest plans would jeopardize the continued existence of the Mexican spotted owl and would adversely modify the owl's critical habitat.

29.   In June, 1996, the Forest Service amended the forest plans for the 11 national forests in the Southwest Region to include additional standards and protection for the Mexican spotted owl, northern goshawk, and old growth forests.

I.      2005 Biological Opinion

30.   On June 10, 2005, FWS issued a biological opinion on the effects of the continued implementation of the 11 national forests in the Southwest Region on threatened and endangered species (hereinafter "2005 Biological Opinion").  FWS concluded that the forest plans in the Southwest Region would adversely affect 36 listed species, including 3 species of mammals, 5 species of birds, 3 species of reptiles and

amphibians, and 12 species of fish.  FWS found that implementation of the forest plans was expected to result in the "incidental" take of a number of threatened and endangered species, including the Mexican spotted owl, southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow and spikedace.

31.   For the Mexican spotted owl, FWS determined that take is reasonably certain to occur as a result of the continued implementation of forest plans in the Southwest Region.  FWS determined that the anticipated level of take was most appropriately quantified in terms of the number or percent of "Protected Activity Centers" with disturbance and/or habitat alteration.  FWS anticipated that take is reasonably certain to occur within 5 percent of the total Protected Activity Centers in the form of harm and 5 percent of the total number of Protected Activity Centers in the form of harassment for a total of a 10 percent as a result of the proposed action.  The anticipated take is set forth per recovery unit.  FWS and the Forest Service agreed to annually review and evaluate the actual incidental take for project-specific actions.

32.   The 2005 Biological Opinion included an incidental take statement for the Mexican spotted owl, including mandatory terms and conditions. The Forest Service must monitor Mexican spotted owl occupancy of Protected Activity Centers, pursuant to the Mexican spotted owl recovery plan.  This monitoring scheme must assess changes in owl site occupancy rates so that management actions can be adjusted if changes in owl population occur.  In addition, in order to monitor the impacts of incidental take on the

Mexican spotted owl, the Forest Service is required to track and report the effects of implementation of the forest plans on Mexican spotted owls.

33.    The southwestern willow flycatcher was listed as an endangered species on February 27, 1995.  According to the 2005 Biological Opinion, national forests that have occurrences of the southwestern willow flycatcher include the Apache-Sitgreaves, Carson, Gila, and Tonto National Forests.  FWS determined that take is reasonably certain to occur on these four national forests as a result of the continued implementation of the forest plans, in the form of harm and harassment.  FWS was unable to determine, however, the number of southwestern willow flycatcher territories that would be taken.

34.    Pursuant to the mandatory terms and conditions of the 2005 Biological Opinion, the Forest Service must monitor southwestern willow flycatcher sites and associated territories on national forest system lands.  In addition, in order to monitor the impacts of incidental take, the Forest Service must track and report the effects of implementation of the forest plans on southwestern willow flycatchers.

35.    The Chiricahua leopard frog was listed as a threatened species on June 13, 2002.  The Chiricahua leopard frog is known to occur on the Apache-Sitgreaves, Coconino, Coronado, Gila and Tonto National Forests.  FWS anticipates that take of the Chiricahua leopard frog is reasonably certain to occur as a result of the continued implementation of the Apache-Sitgreaves, Coconino, Coronado, Gila and Tonto Forest Plans.  This take is expected to be in the forms of harm and harassment due to road use and management, prescribed fire, mechanical fuels treatments, chemical use, rangeland management, recreation, and the impacts of surface disturbing projects.  FWS concluded

that the incidental take of the Chiricahua leopard frog will be considered exceeded if, after a period of two consecutive years, there is a decrease in the number of occupied population sites on national forest system lands as result of the proposed action.

36.   The Forest Service must monitor populations of Chiricahua leopard frogs on national forest system lands.  In addition, in order to monitor the impacts of incidental take, the Forest Service must track and report the effects of the proposed action on Chiricahua leopard frogs.

37.   The New Mexico ridge-nosed rattlesnake was listed as a threatened species in 1978.  The Peloncillo Mountains population of the New Mexico ridge-nosed rattlesnake on the Coronado National Forest is one of three known populations.  Within the Peloncillo Mountains, a total of 27 New Mexico ridge-nosed rattlesnakes have been found in 13 general areas.  FWS anticipated that the incidental take of New Mexico ridge-nosed rattlesnakes is reasonably certain to occur as a result of the continued implementation of the Coronado Forest Plan, in the form of direct mortality, harm and harassment.

38.   The Forest Service must monitor New Mexico ridge-nosed rattlesnake habitat on the Coronado National Forest.  In addition, in order to monitor the impacts of incidental take, the Forest Service must track and report the effects of the proposed action on New Mexico ridge-nosed rattlesnakes.

39.   The Apache trout is designated as a threatened species.  According to the biological opinion, Apache trout occur on the Apache-Sitgreaves, Coronado, and Kaibab National Forests.  FWS concluded that incidental take of Apache trout is reasonably

certain to occur as result of the continued implementation of the Apache-Sitgreaves, Coronado, and Kaibab Forest Plans.

40.   FWS concluded that the incidental take of Apache trout will be considered exceeded if, after a period of two consecutive years, there is a loss of any one population on national forest system lands as a result of the proposed action.  The Forest Service must monitor Apache trout populations on national forest system lands.  In addition, in order to monitor the impacts of incidental take, the Forest Service must track and report the effects of the proposed action on Apache trout.

41.   The loach minnow was listed as a threatened species in 1986.  FWS determined that incidental take of loach minnow is reasonably certain to occur as a result of the continued implementation of the Apache-Sitgreaves and Gila National Forest Plans.  FWS concluded that incidental take of loach minnows will be considered exceeded if, after a period of two calendar years, there is a loss in the current number of loach minnow sites on national forest system lands as a result of the proposed action, without being offset by newly established sites.  The Forest Service must monitor loach minnow sites on national forest system lands.  In addition, in order to monitor the impacts of incidental take, the Forest Service must track and report the effects of the proposed action on loach minnow.

42.   Spikedace was listed as a threatened species in 1986.  FWS determined that incidental take of spikedace is reasonably certain to occur on the Apache-Sitgreaves, Coconino, Gila, and Prescott National Forests as a result of the continued implementation of the forest plans.  Incidental take of spikedace will be considered to be exceeded if,

over a period of two consecutive years, the total number of spikedace sampled within the

Gila National Forest drops below 500 spikedace as a result of the proposed action.  In

addition, two of three sites on the Gila National Forest (East Fork, West Fork, and Middle

Fork of the Gila River) must remain occupied with spikedace, or take will be exceeded.

43.   The Forest Service must monitor spikedace populations on national forest

system lands.  In addition, in order to monitor the impacts of incidental take, the Forest

Service must track and report the effects of the proposed action on spikedace.

44.   The 2005 Biological Opinion recognizes that formal consultation must be

reinitiated if (1) the amount or extent of incidental take is exceeded; (2) new information

reveals effects of the action that may affect listed species or critical habitat in a manner or

to an extent not considered; (3) the action is modified in a manner that causes an effect to

listed species or critical habitat that was not considered in the biological opinion; or (4) a

new species is listed or critical habitat designated that may be affected by the action.  In

the instances where the amount or extent of incidental take is exceeded, any operations

causing such take must cease pending reinitiation.

II.   The Forest Service "Annual Report" for June 10, 2005 - June 10, 2007

45.   In October, 2008, the Forest Service completed its "Annual Report" for the

period June 10, 2005 through June 10, 2007, regarding the 2005 Biological Opinion.  The

Forest Service acknowledges in the 2008 Annual Report that it is not complying with the

monitoring requirements set forth in the 2005 Biological Opinion for a number of listed

species, including the Mexican spotted owl, southwestern willow flycatcher, New

Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow

and spikedace.

46.   For the Mexican spotted owl, the Forest Service typically monitored only 20-25% of Protected Activity Centers during 2005-07.  Protected Activity Centers were monitored for owl occupancy but not owl reproduction, and therefore reproductive success is not accurately reflected.  The Forest Service states that personnel and funding levels are not adequate to meet the monitoring requirements set forth in the terms and conditions of the 2005 Biological Opinion.  As a result, in many cases, monitoring has not been accomplished.  In addition, the Forest Service claims that the incidental take authorized by the 2005 Biological Opinion is difficult to understand at the Forest level.  When fire suppression and fire-fighting impacts are taken into consideration, the Forest Service has exceeded the incidental take limits for the Mexican spotted owl that are set forth in the 2005 Biological Opinion.

47.   For the southwestern willow flycatcher, the Forest Service stated that the Tonto National Forest has indicated that monitoring efforts were to be reduced in 2007, and that the Apache-Sitgreaves National Forest did not monitor sites in 2007.  According to the Annual Report, the Forest Service will likely not be able to continue to monitor the Roosevelt Lake site at past levels, and thus it will be difficult to comply with the terms and conditions of the 2005 Biological Opinion.  The Forest Service also claims that issuing take for the southwestern willow flycatcher at the site level has been problematic.

48.   For the Chiricahua leopard frog, monitoring has not been conducted according to protocol on all possible sites due to insufficient funds and personnel.  According to the Forest Service, it appears that take has been exceeded for the Chiricahua

leopard frog.  The Forest Service further acknowledges that monitoring as required by the 2005 Biological Opinion is not occurring for all populations.  The Forest Service also expresses its concern that it is unable to fund the monitoring that is required in the 2005 Biological Opinion.  The Forest Service states that several populations of the Chiricahua leopard frog have been lost, particularly on the Coronado National Forest, but claims it does not appear these losses are the result of implementation of the Coronado Forest Plan.  The Forest Service also acknowledges there is an issue of exceeding take on the Gila National Forest.  And, the Forest Service states that the majority of the potentially suitable habitat on the Clifton Ranger District of the Apache-Sitgreaves National Forest remains without surveys.

49.   For the New Mexico ridge-nosed rattlesnake, the Forest Service states that budget limitations have precluded monitoring efforts.  As stated by the Forest Service, due to the fact that it is extremely difficult to survey and find the species, as a result of its secretive behavior and cryptic coloration, the Forest Service is unable to expend the time and dollars that is required to conduct surveys on any regular basis.

50.   For the Apache trout, the Forest Service states that only five miles of surveys were completed on the Apache-Sitgreaves National Forest.  The Forest Service acknowledges that it has not, and will likely not in the future, annually monitor all populations of Apache trout on national forest systems lands.

51.   For the loach minnow, the Forest Service admits that the Apache-Sitgreaves National Forest has occupied habitat but that the amount is unknown.  Surveys have not been conducted in presumed habitat, and it is unknown whether any losses of populations

have occurred since 2005.  The 2008 Annual Report further states that the Apache-Sitgreaves National Forest has not cooperatively monitored loach minnow sites on the forest.  As further stated, funding and personnel are not available to do adequate surveys and monitoring on all national forests with loach minnow.  The Apache-Sitgreaves National Forest has not been able to conduct adequate surveys and monitoring of loach minnow populations.  The Forest Service also states that it is very difficult to reduce the impacts of certain projects to insignificant or discountable for this species.  Critical habitat was designated for the loach minnow in 2007.

52.   For the spikedace, the 2008 Annual Report states that no cooperative monitoring occurred on the Apache-Sitgreaves or the Coconino National Forests within the reporting period.  According to the Forest Service, funding and personnel are not available to do adequate surveys and monitoring in all cases.  Critical habitat was designated for spikedace in 2007.

53.   As summarized in the 2008 Annual Report, several national forests in the Southwest Region have indicated their inability to comply with the monitoring required by the terms and conditions in the 2005 Biological Opinion for many threatened and endangered species.  Most, if not all, national forests in the Southwest Region are faced with personnel and funding levels that are not adequate to accomplish the monitoring required by the 2005 Biological Opinion.

54.   The October, 2008 "Annual Report" covers the period from June 10, 2005 through June 10, 2007.  At this time, no other Annual Reports have been completed or provided to FWS.

III.     Correspondence Between the Forest Service and FWS

55.   On April 17, 2009, the Forest Service wrote to FWS to request the re-initiation of formal consultation on the 2005 Biological Opinion.  According to the April 17th letter, "[i]has now become apparent that the Forest Service will likely soon exceed the amount of take issued for at least one species, the Mexican spotted owl." Additionally, "it has become apparent that the Forest Service is unable to fully implement and comply with the monitoring requirements associated with the Reasonable and Prudent Measures for several species (including MSO) in the [biological opinion]."

56.   On June 22, 2010, FWS responded to the Forest Service's April 17, 2009 letter.  FWS states that it recently received new information and agrees that reinitiation of consultation for the Mexican spotted owl is warranted.  Therefore, FWS "accepts" the Forest Service's request to reinitiate consultation to address the effects of forest management to the Mexican spotted owl.  FWS' June 22, 2010, letter includes no mention of the southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, or spikedace.

57.   FWS and the Forest Service have not reinitiated consultation regarding the continued implementation of the forest plans in the Southwest Region on the southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, or spikedace.

58.   On September 17, 2009, the Forest Service issued an "ESA Section 7(d) Determination for the Continued Implementation of the Eleven National Forests and Grasslands Land and Resource Management Plans."  The September 17, 2009, Section

7(d) determination again acknowledges that the Forest Service is unable to comply with the monitoring requirements of the 2005 Biological Opinion.  While the Section 7(d) determination purports to cover all threatened and endangered species on national forests in the Southwest Region, the Forest Service and FWS have not reinitiated consultation for the southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, or spikedace.  Section 7(d) does not apply where consultation or the reinitiation of consultation has not been initiated.

59.   The September 17, 2009, Section 7(d) determination states that the Forest Service will remain within the level of incidental take that has been issued in the 2005 Biological Opinion until the reinitiation of consultation is concluded.  The level of incidental take in the 2005 Biological Opinion, however, has already been exceeded for certain listed species including the Chiricahua leopard frog.  The level of incidental take in the 2005 Biological Opinion has also been exceeded, or is close to being exceeded, for the Mexican spotted owl.  Moreover, by failing to comply with the mandatory monitoring and reporting requirements for numerous threatened and endangered species, the extent of harm and take for these species from implementation of the forest plans is unknown.

IV.   Significant New Information, Listings, and Critical Habitat Designations Subsequent to the to 2005 Biological Opinion

60.   Subsequent to the 2005 Biological Opinion, there has been significant new information revealing potential affects of the continued implementation of forest plans in the Southwest Region on listed species and their critical habitat that has not been considered through consultation between the Forest Service and FWS.  This new

information includes, but is not limited to, the ongoing drought in the southwest, the impacts and implications of climate change, the increased threat of invasive species, severe wildfires and the increased threat of additional severe wildfires, and the recent sighting of a critically endangered ocelot in southern Arizona.

61.   Since FWS prepared the 2005 Biological Opinion, there have also been new listings and critical habitat designations, including the November, 2005 listing and designation of critical habitat for the Gila chub; the October, 2005, designation of critical habitat for the southwestern willow flycatcher; and the March, 2007, designation of critical habitat for the loach minnow and spikedace.  In addition, FWS prepared a recovery plan for the Chiricahua leopard frog in 2007, and revised the recovery plan for the Apache trout in September, 2009.  Furthermore, new species have been found warranted for listing and designated as candidates for listing in the region, including the roundtail and headwater chub, Mexican garter snake, and Rio Grande cutthroat trout.

V.   On-going Activities and Approved Projects Affecting Threatened and Endangered Species in the Southwest Region

62.   Forest plans are recognized as important programmatic documents that set forth standards and guidelines for resource management on national forests, including logging, livestock grazing, road building, mining, and recreational activities.  Forest plans define the direction for managing national forests for a period of 10-15 years.  Each and every individual project that is planned and approved on a national forest must be consistent with the standards, guidelines, and direction of the governing forest plan.  16 U.S.C. § 1604(i).

63.   Decisions made in forest plans may result in adverse affects to listed species even without the subsequent approval or authorization of site-specific projects.  For instance, forest plans may allow dispersed recreational activities in specific areas that are utilized by threatened and endangered species, and such activities may result in adverse effects to these species.  Forest plans may also make decisions regarding where wildfires will be suppressed, and such fire-fighting activities may result in adverse effects to listed species.  Forest plans may also allow the day-to-day use of roads and trails within the applicable national forest for a variety of uses, which may adversely affect listed species. In addition, for projects such as grazing allotments and timber sales that receive subsequent site-specific approval, forest plans provide importance guidance for these decisions, which must comply with the forest plan.

64.   The Forest Service has not issued any restrictions on the use of national forests in the Southwest Region in response to the agency's substantial monitoring and reporting deficiencies for threatened and endangered species.

65.   Despite the on-going monitoring and reporting deficiencies and violations of the terms and conditions of the 2005 Biological Opinion for numerous listed species, and the potential exceedance of the authorized incidental take for one or more listed species, the Forest Service has continued to approve and allow projects and activities on national forests in the Southwest Region that adversely affect and likely take these listed species.

66.   The Forest Service has signed the decision notice for the Upper Beaver logging project on the Coconino National Forest, which authorizes 11,740 acres of logging within Mexican spotted owl habitat, including 159 acres of logging in Protected

Activity Centers.  FWS issued a biological opinion on June 15, 2009.  FWS concluded that the project is reasonably certain to result in take of the Mexican spotted owl over the life of the project.  FWS anticipates the take of one pair of Mexican spotted owls in the form of harm and harassment associated with three Protected Activity Centers, due to long-term thinning operations planned during multiple breeding seasons immediately adjacent to Protected Activity Centers.  This anticipated take is in the form of chronic disturbance.  The noise generated by the logging project is likely to interrupt, impede, or disrupt normal behavior patterns to the point that breeding and feeding activities are impacted.  Plaintiff Center for Biological Diversity administratively appealed the Upper Beaver project, and the Forest Service denied the Center's appeal.

67.    The Forest Service has authorized numerous livestock grazing allotments in the Peloncillo Mountains of the Coronado National Forest.  In 2008, FWS prepared a biological opinion regarding the impacts of the Deer Creek, Graves, Juniper Basin, Outlaw Mountain, Skull Canyon, Skelton Canyon, and Fairchild grazing allotments.  In assessing impacts to the New Mexico ridge-nosed rattlesnake, FWS concluded that impacts would be the same as set forth in its 2002 biological opinion regarding grazing activities on the Coronado National Forest.  In the 2002 biological opinion, FWS stated that grazing would occur over the entire range of the New Mexico ridge-nosed rattlesnake in the Peloncillo Mountains, and that take is reasonable certain to occur.  FWS concluded that take is likely due to direct mortality or injury by trampling and by harm resulting from reduced vegetative cover.

68.   In 2008, FWS issued a biological opinion for the Phase II Utility Maintenance in Utility Corridors on Arizona Forests, which covers all maintenance related activities along utility corridors on national forest system lands in Arizona for 10 years.  FWS anticipates that the project will result in the taking of one pair of Mexican spotted owls in the form of harm and/or harassment within each of 16 Protected Activity Centers.  Incidental take is anticipated to occur at least once in each of these 16 Protected Activity Centers over the course of the project.  FWS also found it possible that additional take could occur in an additional 62 Protected Activity Centers in the project area.  For the southwestern willow flycatcher, FWS anticipates that the project will incidentally take all breeding southwestern willow flycatchers at two sites.  For the loach minnow, the project is also reasonably certain to cause take in the forms of harm and/or harassment resulting in habitat modification and injury or death.  FWS anticipates that take of loach minnow will occur at each of eight road crossings on the Blue River and Campbell Blue Creek.

69.   In 2008, FWS completed a biological opinion for the Wildbunch allotment management plan on the Apache-Sitgreaves National Forest.  For impacts to the Mexican spotted owl, FWS acknowledged that no surveys have been completed, and thus the number of owls inhabiting the area is unknown.  FWS concludes that although the project does not meet the guidance of the recovery plan, FWS is unable to conclude with reasonable certainty where owls are present and how they might be incidentally taken, and thus includes no terms and conditions or limits on take.  For the loach minnow, FWS concludes that the proposed grazing will result in take due to adverse affects to the

riverine habitat in which loach minnow live.  This take will be in the form of harm, in

that habitat will be degraded in such a way to result in death or injury.  FWS anticipated

that take will occur throughout the portions of the Blue and San Francisco rivers and their

tributaries within the action area.  FWS also concluded that take of Chiricahua leopard

frog will occur on the allotment.

FIRST CLAIM FOR RELIEF

The Forest Service's Failure to Comply with Mandatory Monitoring and Reporting
Requirements for Threatened and Endangered Species Violates the ESA

70.   Plaintiff hereby incorporates by reference all preceding paragraphs.

71.   The Forest Service is violating the mandatory terms and conditions set forth

in the 2005 Biological Opinion concerning the implementation of forest plans in the

Southwest Region, including monitoring and reporting requirements for a number of

listed species, including the Mexican spotted owl, southwestern willow flycatcher, New

Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow

and spikedace, in violation of the ESA.  *See* 16 U.S.C. § 1536(b)(4); 50 C.F.R. §§

402.14(i)(1)(iv), 402.14(i)(3).

72.   The Forest Service has also exceeded, or is close to exceeding, the incidental

take limit set forth in the 2005 Biological Opinion for listed species, including the

Mexican spotted owl and Chiricahua leopard frog, but failed to reinitiate consultation

immediately. 50 C.F.R. §§ 402.14(i)(4); 402.16.

73.   By failing to comply with the mandatory monitoring and reporting

requirements that are included within the terms and conditions of the 2005 Biological

Opinion, the Forest Service is failing to conserve these threatened and endangered species as required by 16 U.S.C. § 1536(a)(1).

74.   By failing to comply with the monitoring and reporting requirements that are included in the terms and conditions of the 2005 Biological Opinion, and by exceeding the incidental take limit for certain listed species, the Forest Service is failing to insure that implementation of forest plans in the Southwest Region is not likely to jeopardize the continued existence of listed species, including the Mexican spotted owl, southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow and spikedace.  *See* 16 U.S.C. § 1536(a)(2).

75.   The Forest Service's failure to comply with the mandatory monitoring and reporting requirements for the Mexican spotted owl, southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow and spikedace constitutes new information and a change to the proposed action that will cause effects to these species not considered in the 2005 Biological Opinion. *See* 50 C.F.R. § 402.16.  The Forest Service's failure to reinitiate and timely complete consultation regarding the implementation of forest plans in the Southwest Region on the Mexican spotted owl, southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow and spikedace violates the ESA.  *Id.*

76.   The Forest Service is thus failing to comply with non-discretionary obligations under the ESA for numerous threatened and endangered species that reside in or depend on national forests in the Southwest Region.  *See* 16 U.S.C. § 1540(g).

SECOND CLAIM FOR RELIEF

<u>Defendants' Decision to Reinitiate Consultation on the Mexican Spotted Owl, But Not the Southwestern Willow Flycatcher, New Mexico Ridge-nosed Rattlesnake, Chiricahua Leopard Frog, Apache Trout, Loach Minnow, and Spikedace, Violates the ESA</u>

77.   Plaintiff hereby incorporates by reference all preceding paragraphs.

78.   The Forest Service has substantially failed to comply with mandatory monitoring and reporting requirements for a number of threatened and endangered species, including the Mexican spotted owl, southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, and spikedace.

79.   While the Forest Service and FWS have belatedly agreed to reinitiate consultation regarding the continued implementation of forest plans in the Southwest Region on the Mexican spotted owl, the agencies have arbitrarily failed and refused to reinitiate consultation for the southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, and spikedace.

80.   The Forest Service and FWS decision to reinitiate consultation for the Mexican spotted owl, but not the southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, and spikedace, violates the ESA.   *See* 16 U.S.C. §§ 1536(a)(2), 1536(b)(1)(A), 1536(c)(1); 50 C.F.R. §§ 402.12, 402.14(e), 402.14(i)(4), 402.16.

81.   The Forest Service and FWS have violated the agencies' non-discretionary duty to reinitiate consultation for the southwestern willow flycatcher, New Mexico ridge-

nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, and spikedace, and have otherwise acted in a manner that is arbitrary, capricious, and abuse of discretion, and contrary to law.  *See* 16 U.S.C. § 1540(g); 5 U.S.C. § 706.

THIRD CLAIM FOR RELIEF

<u>The Forest Service's Authorization of Continued Livestock Grazing in the Fairchild Allotment on the Coronado National Forest Violates the ESA</u>

82.   Plaintiff hereby incorporates by reference all preceding paragraphs.

83.   The Forest Service's allowance, authorization, and approval of projects and activities on national forests in the Southwest Region that may affect the southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, and/or spikedace, prior to the reinitiation and completion of consultation with FWS, violates the ESA.  *See* 16 U.S.C. §§ 1536(a)(2), (d).

84.   FWS has determined that the Fairchild grazing allotment on the Coronado National Forest is reasonably certain to result in the take of the New Mexico ridge-nosed rattlesnake.

85.   The Forest Service's decision to authorize continued livestock grazing on the Fairchild allotment of the Coronado National Forest, prior to reinitiating and completing consultation on the continued implementation of forest plans in the Southwest Region on the New Mexico ridge-nosed rattlesnake, violates the ESA.  *See* 16 U.S.C. §§ 1536(a)(2), 1536(d); *see also* 16 U.S.C. § 1540(g).

## FOURTH CLAIM FOR RELIEF

<u>The Forest Service's Approval of the Upper Beaver Logging Project Violates the ESA</u>

86.   Plaintiff hereby incorporates by reference all preceding paragraphs.

87.   The Forest Service's allowance, authorization, and approval of projects and activities on national forests in the Southwest Region that are likely to result in the take of the Mexican spotted owl, prior to the completion of reinitiated consultation with FWS, violates Section 9 and Section 7 of the ESA.  *See* 16 U.S.C. § 1538(a)(1); 16 U.S.C. § 1533(d); 50 C.F.R. § 17.31; 16 U.S.C. § 1536(a)(2).

88.   The Forest Service has failed to prevent the irreversible and irretrievable commitment of resources with respect to the ongoing impacts of implementation of the forest plans in the Southwest Region on the Mexican spotted owl pending the completion of the reinitiated consultation, in violation of Section 7(d) of the ESA.  *See* 16 U.S.C. § 1536(d).

89.   FWS has determined that the Upper Beaver logging project on the Coconino National Forest is reasonably certain to result in the take of the Mexican spotted owl.

90.   The Forest Service's approval and decision to proceed with the Upper Beaver logging project, prior to the completion of the reinitiated consultation with FWS regarding the implementation of forest plans in the Southwest Region on the Mexican spotted owl, violates the ESA.  *See* 16 U.S.C. § 1536(a)(2), (d); 16 U.S.C. § 1538(a)(1); 16 U.S.C. § 1533(d); 50 C.F.R. § 17.31; *see also* 16 U.S.C. § 1540(g).

RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Declare that the Forest Service is in violation of the ESA regarding its ongoing failure to comply with the mandatory monitoring and reporting requirements of the 2005 Biological Opinion;

B.      Compel the Forest Service to immediately begin complying with the mandatory terms and conditions of the 2005 Biological Opinion;

C.      Declare that the Forest Service and FWS have violated the ESA by failing to reinitiate and timely complete consultation regarding the impacts of the continued implementation of forest plans in the Southwest Region on the Mexican spotted owl, southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, and spikedace;

D.      Order the Forest Service and FWS to immediately reinitiate and timely complete consultation regarding the impacts of the continued implementation of forest plans in the Southwest Region on the Mexican spotted owl, southwestern willow flycatcher, New Mexico ridge-nosed rattlesnake, Chiricahua leopard frog, Apache trout, loach minnow, and spikedace;

E.      Declare that the Forest Service has violated the ESA in approving and authorizing livestock grazing on the Fairchild allotment on the Coronado National Forest;

F.      Order injunctive relief as necessary to protect the threatened and endangered species that will be adversely affected by the Fairchild grazing allotment;

G.      Declare that the Forest Service has violated the ESA in approving the

Upper Beaver logging project on the Coconino National Forest;

H.      Enjoin the Forest Service from proceeding with the specific portions of the

Upper Beaver logging project which may affect the Mexican spotted owl, including

logging that is proposed immediately adjacent to Protected Activity Centers during the

owl's breeding season;

I.      Award to Plaintiff its costs, expenses, expert witness fees, and reasonable

attorney fees pursuant to applicable law including the Endangered Species Act, 16 U.S.C.

§ 1540(g); and Equal Access to Justice Act, 28 U.S.C. § 2412; and

J.      Grant Plaintiff such further relief as may be just, proper, and equitable.

Dated: July 20, 2010.                    Respectfully submitted,

s/ Marc D. Fink
Marc D. Fink (MN Bar No. 343407)
Center for Biological Diversity
209 East 7th Street
Duluth, Minnesota 55805
Tel: 218-525-3884
mfink@biologicaldiversity.org
Applicant *Pro Hac Vice*

Matt Kenna (CO Bar No. 22159)
Public Interest Environmental Law
679 E. 2nd Ave., Suite 11B
Durango, Colorado 81301
Tel: 970-385-6941
matt@kenna.net
Applicant *Pro Hac Vice*

Attorneys for Plaintiff